## UNITED PAPERWORKERS INTERNATIONAL, LOCAL # 395, and United Paperworkers International, Local # 766, Plaintiffs,

v.

## ITT RAYONIER, INC., Defendant.

### No. 89–534–Civ–J–12.

United States District Court, M.D. Florida, Jacksonville Division.

July 18, 1990.

On Motion for Stay Pending Appeal Sept. 6, 1990.

---

**428**

John F. MacLennan, Kattman, Eshelman & MacLennan, P.A., Jacksonville, Fla., for plaintiffs.

Guy O. Farmer, II and Kevin E. Hyde, Jacksonville, Fla., for defendant.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND COMPELLING ARBITRATION OF GRIEVANCE

MELTON, District Judge.

This cause is before the Court on plaintiffs' Motion for Summary Judgment, filed herein on May 16, 1990, and defendant's Cross–Motion for Summary Judgment, filed herein on June 15, 1990. Defendant's response to plaintiff's motion was incorporated in its cross-motion and plaintiffs' memorandum in opposition to defendant's cross-motion was filed herein on July 6, 1990. For the reasons stated herein, the Court will grant plaintiffs' motion and will deny defendant's cross-motion.[1]

Plaintiffs, United Paperworkers International, Local No. 766 and Local No. 395 (collectively "the Union"), move for an order to compel arbitration of a grievance filed with defendant ITT Rayonier Incorporated ("the Company") on July 11, 1988, concerning the subcontracting out of work previously performed by members of the Union. The Union argues that the subject matter of grievance falls within the scope of the arbitration clause and therefore this Court must order the Company to arbitrate. *See, e.g., AT & T Technologies, Inc. v. Communication Workers of Am.,* 475 U.S. 643, 650–51, 106 S.Ct. 1415, 1419–20, 89 L.Ed.2d 648 (1988); *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960).

The Company moves for judgment in its favor on the ground that the grievance was not timely filed under the collective bar-

---

1. Also pending at this time are defendant's Motion for Certification of Issue of Law for Immediate Appeal Pursuant to 28 U.S.C. § 1292(b), filed herein on June 20, 1990, and defendant's Motion for Stay of Proceedings during Appeal Pursuant to 28 U.S.C. § 1292(b), filed herein on July 2, 1990. Defendant seeks in the first of these motions permission to take interlocutory appeal of this Court's order denying defendant's motion for summary judgment on the issue of the appropriate statute of limitation for this action. Defendant's counsel informed the Court at the final pretrial conference that these motions are essentially moot inasmuch as the pending motions for summary judgment will accomplish the rapid presentation of this case to the court of appeals which defendant desires to accomplish with the motions concerning interlocutory appeal.

gaining agreement. The Company maintains that the matter of timeliness is properly decided by this Court, relying on *United Steelworkers v. Cherokee Electric*, 127 LRRM 2375, 108 Lab. Cases (CCH) ¶ 10,441, 1987 WL 17056 (N.D.Ala.1987), *aff'd without opinion*, 829 F.2d 1131 (11th Cir.), *cert. denied*, 485 U.S. 1038, 108 S.Ct. 1601, 99 L.Ed.2d 915 (1988). The Company argues that the National Labor Relations Board's determination regarding the date on which the unfair labor practice charge arose should be accorded deference in determining the timeliness of the grievance. If the Court followed this suggestion, the grievance would be unquestionably untimely.

■ The NLRB, however, was not concerned with the same issue that is before the Court. The unfair labor practice charge relates to an allegation of refusal to bargain over conditions of employment; the grievance covers the effect of that failure, the opening of the nonunion wood chipping operation and its displacement of union members, an event that took place much later than the refusal to bargain itself. Moreover, the deference normally accorded to the NLRB on the interpretation of labor statutes derives from its expertise concerning national labor policy, *see, e.g.,* *NLRB v. Curtin Matheson Scientific, Inc.,* — U.S. ——, 110 S.Ct. 1542, 1549, 108 L.Ed.2d 801 (1990); by contrast, the procedural issue of a grievance's timeliness is committed to the special expertise and discretion of the arbitrator, *see generally Shopmen's Local No. 539 v. Mosher Steel Co.,* 796 F.2d 1361 (11th Cir.1986). The Court therefore finds no bar to compelling arbitration resulting from the NLRB's determination that the unfair labor practice charge was untimely.

■ The Company does not dispute the Union's contention that the underlying grievance is substantively arbitrable. The Company interposes only the procedural issue of timeliness. "Once it is determined ... that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposi-

tion should be left to the arbitrator." *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 557, 84 S.Ct. 909, 918, 11 L.Ed.2d 898 (1964); *accord United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 40, 108 S.Ct. 364, 372, 98 L.Ed.2d 286 (1987). This principle applies with particular force when, as here, the arbitration provision has broad coverage, governing "a dispute [which] arise[s] as to the interpretation or application of this contract...." 1983 Collective Bargaining Agreement Between ITT Rayonier Fernandina Division and UPIU Local 395 and 766, § 6(A)(1). The breadth of this language concerning arbitrable disputes creates a contractual basis for committing the issue of timeliness to the arbitrator. *See International Union of Operating Eng'rs Local 150 v. Flair Builders, Inc.,* 406 U.S. 487, 491–92, 92 S.Ct. 1710, 1712–13, 32 L.Ed.2d 248 (1972) (collective bargaining agreement providing for arbitration of "any difference" committed issue of laches to arbitrator).

The Company's reliance on *Cherokee Electric* is misplaced. The district court in that case reached a narrow holding that arbitration should not be compelled where the union conceded that the grievance was untimely under the collective bargaining agreement. The core principle of this holding is quite sound. If an arbitrator could not reasonably find that the grievance was timely, then the court should not compel arbitration because an arbitration award in favor of the union would not be enforceable if rendered. *See, e.g., United States Postal Serv. v. National Ass'n of Letter Carriers,* 847 F.2d 775, 778 (11th Cir.1988) (court will not enforce arbitrary or capricious arbitration award); *see also United Paperworkers,* 484 U.S. at 38, 108 S.Ct. at 371 (court cannot refuse to enforce award on ground that arbitrator misread contract, but may if arbitrator ignored plain language of agreement). Of course, this principle has its corollary, namely, if an arbitrator could reasonably find the grievance timely, then the court must order arbitration. *See Drummond Coal Co. v. United Mineworkers of Am.,* 748 F.2d 1495, 1499 (11th Cir.1984); *accord Shopmen's Local No. 539,* 796 F.2d at 1366 (district court

erred in refusing to enforce arbitration award where arbitrator rendered reasonable ruling on timeliness issue). The Union presents grounds upon which an arbitrator could reasonably conclude that the grievance is timely, including an argument concerning waiver of the timeliness issue.

The foregoing analysis leads the Court to conclude that the question of timeliness raised by the Company is an issue committed to the arbitrator and therefore is not a basis to refuse to compel arbitration. The Union also requests judgment in its favor on the matter of the timeliness of the filing of this action, an issue that has since been resolved in the Union's favor. *See United Paperworkers Int'l, Local No. 395 v. ITT Rayonier, Inc.*, 740 F.Supp. 833 (M.D.Fla. 1990). The impediments to an order compelling arbitration have been removed and the Union has demonstrated the prerequisites thereto. Accordingly, it is

ORDERED AND ADJUDGED:

1. That defendant's Cross–Motion for Summary Judgment is hereby denied;

2. That plaintiff's Motion for Summary Judgment is hereby granted;

3. That defendant ITT Rayonier, Incorporated, is hereby ordered to submit forthwith to final and binding arbitration of grievance no. 88–Joint in accordance with the terms of the 1983 Collective Bargaining Agreement Between ITT Rayonier, Fernandina Division and UPIU Local 395 and 766; and

4. That the Clerk of Court is hereby directed to enter judgment for plaintiffs in accordance with this order.

Done and ordered.

### ON MOTION FOR STAY PENDING APPEAL

This cause is before the Court on defendant's Motion for Stay of the Court's Order and Final Judgment of July 18, 1990, filed herein on August 9, 1990. Plaintiffs responded with a memorandum in opposition to the motion, filed herein on August 31, 1990.

The power of this Court to grant a stay pending appeal is governed by Fed.R. Civ.P. 62(c). The factors regulating the issuance of a stay are:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S.Ct. 2113, 2119, 95 L.Ed.2d 724 (1987) (citing *inter alia Garcia–Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir.1986)). "Since the traditional stay factors contemplate individualized judgments in each case, the formula cannot be reduced to a set of rigid rules." *Id.* 481 U.S. at 777, 107 S.Ct. at 2119.

"Ordinarily the first factor is the most important." *Garcia–Mir*, 781 F.2d at 1453. If defendant ITT Rayonier, Inc. ("the Company"), as the stay applicant, demonstrates a probable likelihood of success on merits on appeal, a stay should be granted. *Id.* A lesser showing of a "substantial case on the merits" will justify a stay if the balance of equities in the other three factors weighs heavily in favor granting the stay. *Id.*

The Company's application for a stay focuses on the statute of limitation argument rejected by the Court in its order entered July 18, 1990. The Company acknowledges that the Eleventh Circuit has not yet reviewed a case arising out of Florida in which the statute of limitation for an action to compel arbitration is at issue. The Company relies on the authorities that it argued to the Court in its motion for summary judgment.

The Company's reliance on its previous authorities forecloses a finding that it has a probable likelihood of success on the merits. Whether the Company presents a substantial case on the merits is a close question. The Company did not address adequately, in its reply memorandum on the summary judgment motion, the distinguishing characteristics of the Florida specific performance statute of limitation and the strong endorsement of state statutes of

limitations in *Reed v. United Transportation Union,* 488 U.S. 319, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989). A recent scholarly article on the subject endorses the Court's view. *See* Stein, *10(b) or Not 10(b): A Critical Overview of Court–Selected Limitations Periods in Labor Law,* 6 Labor Lawyer 331, 379–83 (1990). The Court concedes, however, that the unsettled state of the law presents the Company with an opportunity to press its case and, therefore, that case may be described as "substantial" for present purposes.

Because the Company can at best make the lesser showing, the other three factors must weigh heavily in its favor to warrant the granting of a stay. It is plain that they do not. The second and fourth factors intercede against a stay.

The requirement of irreparable harm is the most significant weakness in the Company's motion. While a finding of irreparable harm is not a sufficient condition for a stay, *see, e.g., In re Trinity Indus., Inc.,* Case No. Misc–J–83–131–12, Order Denying Application for Stay Pending Appeal, slip op. at 3 (M.D.Fla. Sept. 21, 1987), such a finding is a necessary condition, *see, e.g., Garcia–Mir,* 781 F.2d at 1454–55; *see also Northeastern Florida Chapter of Ass'n of Gen. Contr. of Am. v. City of Jacksonville,* 896 F.2d 1283, 1285–86 (11th Cir.1990) (emphasizing irreparable injury requirement in injunctive litigation). The Company proposes that it will suffer irreparable injury in the absence of a stay because "if it is required to expend the money necessary to arbitrate this important issue and then the Court of Appeals reverses the decision of this Court, those sums will never be recovered." Company's Memorandum at 6.

The financial burden of arbitration does not constitute irreparable injury. Binding precedent establishes the general proposition that injuries in terms of money, time and energy necessarily expended in the absence of a stay are not irreparable. *See, e.g., Sampson v. Murray,* 415 U.S. 61, 90, 94 S.Ct. 937, 953, 39 L.Ed.2d 166 (1974); *Northeastern Florida Chapter,* 896 F.2d at 1285; *United States v. Jefferson County,* 720 F.2d 1511, 1520 (11th Cir.1983). Persuasive authority has considered this principle in the context of a motion for stay of an order compelling arbitration of a collective bargaining agreement.

In *Graphic Communications Union v. Chicago Tribune Co.,* 779 F.2d 13 (7th Cir.1985), the Seventh Circuit admonished, "employers who seek stays merely on the ground that the arbitration may turn out to be a wasted expense of time and money are whistling in the dark," *id.* at 16, and threatened to impose sanctions in future cases for which such requests are made.

> [T]he fact that an order to arbitrate imposes a cost, the cost of arbitration, whether it is an opportunity cost of time or an out-of-pocket expense for lawyers or witness fees or whatever, or both types of costs, does not show irreparable harm. Otherwise every order to arbitrate would be deemed to create irreparable harm, and it would be easy to get such orders stayed. That however would fly in the face of the strong federal policy in favor of arbitrating disputes in general and labor disputes in particular.
>
> . . . .
>
> The only harm that an order to arbitrate does is to make the party against whom the order is issued litigate a dispute in a forum not of his choosing. That is no different from the harm of being turned down on a motion to dismiss or for summary judgment, thereby being forced to try a case that one does not believe should be tried, or from the harm of being transferred to another district court or remanded to state court; and in none of these cases is the disappointed party allowed to take an immediate appeal. . . .

*Id.* at 15. The Second Circuit strongly endorsed *Graphic Communications Union* in a case involving an employer's attempt to enjoin arbitration, concluding that the monetary cost of grievance arbitration does not impose a "legally recognized irreparable harm" and that "as the preferred method for resolving labor disputes, arbitration by itself imposes no [irreparable]

injury to the resisting party." *Emery Air Freight Corp. v. Local Union 295*, 786 F.2d 93, 100 (2d Cir.1986).

No authority to the contrary has been identified by the Company or discovered by the Court. The consistency of these specific cases with the general proposition regarding monetary injury leads the Court to follow the persuasive authority and conclude that no irreparable injury has been shown. Owing to the absence of a strong showing in the Company's favor concerning this factor, the Court will deny the motion for a stay pending appeal.[1] Accordingly, it is

ORDERED AND ADJUDGED:

That defendant's Motion for Stay of the Court's Order and Final Judgment of July 18, 1990, is hereby denied without prejudice to defendant's opportunity to seek a stay from the Eleventh Circuit Court of Appeals.

DONE AND ORDERED.

---

**1.** The Court also concludes that the Company cannot make the requisite showing regarding the fourth factor, the public interest. For the reasons expressed in the portions of *Graphic Communications Union* and *Emery Air Freight* quoted in the text, the public interest favors arbitration of the underlying grievance forthwith. "Arbitration is supposed to be swift. It will not be swift if orders to arbitrate are routinely stayed pending appeals from those orders." *Graphic Communications Union*, 779 F.2d at 15. In an interesting paradox, the Company's argument for the imposition of a shorter statute of limitation—the need for swift disposition of labor disputes—is precisely the reason that a stay pending appeal should not be granted.